Approved: _____

JAMIE E. BAGLIEBTER
Assistant United States Attorney

**ORIGINAL**

Before:    THE HONORABLE PAUL E. DAVISON
           United States Magistrate Judge
           Southern District of New York

- - - - - - - - - - - - - - - - X
                                  :
UNITED STATES OF AMERICA          :
                                  :
        - v. -                    :
                                  :
HARBIR PARMAR,                    :
                                  :
                Defendant.        :
                                  :
- - - - - - - - - - - - - - - - X

SEALED COMPLAINT

Violations of
18 U.S.C.
§§ 1201, 1343

COUNTY OF OFFENSE:
WESTCHESTER

18 M 8726

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JAMES MENTON, being duly sworn, deposes and says that
he is a Task Force Officer with the Federal Bureau of
Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Kidnapping)

        1.    From on or about February 21, 2018 through on or
about February 22, 2018, in the Southern District of New York
and elsewhere, HARBIR PARMAR, the defendant, unlawfully seized,
confined, inveigled, decoyed, kidnaped, abducted and carried
away and held for ransom and reward and otherwise, a person when
the person was willfully transported in interstate and foreign
commerce, and the defendant traveled in interstate or foreign
commerce and used the mail or any means, facility, or
instrumentality of interstate or foreign commerce in committing
or in furtherance of the commission of the offense, to wit,
PARMAR kidnapped a victim in Manhattan, New York and unlawfully
transported her to Connecticut.

        (Title 18, United States Code, Section 1201(a)(1).)

COUNT TWO

2.      From at least in or about December 2016 up to and
including at least in or about February 2018, in the Southern
District of New York and elsewhere, HARBIR PARMAR, the
defendant, willfully and knowingly, having devised and intending
to devise a scheme and artifice to defraud, and for obtaining
money and property by means of false and fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds, for the purpose of
executing such scheme and artifice, to wit, PARMAR defrauded
customers of ridesharing services in Manhattan, New York and
elsewhere in the Southern District of New York, of money and did
transmit over the internet false information in furtherance of
that scheme.

(Title 18, United States Code, Section 1343.)


The bases for my knowledge and for the foregoing
charges are, in part, as follows:

3.      I am a Detective with the New York Police
Department and a Task Force Officer with the Federal Bureau of
Investigation ("FBI").  I have been a law enforcement officer
for approximately 24 years.  I have been personally involved in
the investigation of this matter.  This affidavit is based upon
my conversations with law enforcement agents, witnesses and
others, as well as my examination of reports and records.
Because this affidavit is being submitted for the limited
purpose of establishing probable cause, it does not include all
the facts that I have learned during the course of my
investigation.  Where the contents of documents and the actions,
statements and conversations of others are reported herein, they
are reported in substance and in part, except where otherwise
indicated.

4.      Based on my conversations with an individual who
previously resided in White Plains, New York ("Victim-1"), I
have learned, in substance and in part, the following:

a.      On or about February 21, 2018, Victim-1 used
her cellular telephone ("Telephone-1") to order a vehicle
through a ridesharing company ("Company-1") to pick her up in
Manhattan, New York and take her to White Plains, New York,

2

where she resided.  At approximately 11:30 p.m., a vehicle,
driven by an individual later identified as HARBIR PARMAR, the
defendant, arrived and Victim-1 entered the vehicle.

      b.   Victim-1 fell asleep in the vehicle and woke
up with PARMAR in the backseat of the vehicle with his hand
under her shirt touching the top of her breast.  Victim-1
reached for Telephone-1 in an effort to call for help, but
PARMAR took it from her and she was thereafter unable to locate
it.

      c.   Victim-1 made multiple requests for PARMAR
to return Telephone-1 to her, but he denied having it.

      d.   Shortly thereafter, PARMAR got back in the
front seat of the vehicle and resumed driving.  Victim-1
realized that she did not recognize her surroundings and asked
to be taken to White Plains, but PARMAR refused.  Victim-1 also
asked to be taken to the police station, but PARMAR refused.

      e.   Eventually, PARMAR stopped the vehicle on
the side of the highway and Victim-1 exited the vehicle.
Victim-1 memorized the license plate for the vehicle, which was
T713363C, and later wrote it down.

      f.   After exiting the vehicle, Victim-1 went to
a nearby convenience store (the "Convenience Store") and
obtained assistance from an employee working there ("Employee-
1") in calling a cab to take her to White Plains.

      g.   The following day, Victim-1 called Company-1
to report the incident and learned that she was charged
$1,047.55 for a trip from New York to Massachusetts.

      5.   Based on my conversations with Employee-1 as well
as my review of surveillance footage within and surrounding the
Convenience Store, I have learned, in substance and in part, the
following:

      a.   The Convenience Store is located in
Branford, Connecticut near I-95.

      b.   On or about February 22, 2018, at
approximately 2:07 a.m., Victim-1 entered the Convenience Store
and requested assistance calling a cab from Employee-1.

c.    At approximately 2:26 a.m., Victim-1 exited the Convenience Store.

6.    Based on my discussions with a supervisor from a taxi company ("Company-2"), I have learned, in substance and in part, that Victim-1 was picked up by a taxi at approximately 2:34 a.m. from the northbound side of a gas station in Branford, Connecticut and dropped off at an apartment building in White Plains, New York at 3:33 a.m.

7.    Based on my review of records from Company-1, I have learned, in substance and in part, the following:

a.    HARBIR PARMAR, the defendant, is an independent contractor who is licensed to use Company-1's software as a driver.

b.    PARMAR drives a 2016 Toyota Highlander with the license plate T713363C.

c.    On or about February 21, 2018, at approximately 11:09 p.m., the destination for Victim-1's ride in PARMAR's car was set for a location in White Plains, New York.

d.    On or about February 21, 2018, at approximately 11:47 p.m., the destination for Victim-1's ride was changed from Company-1's mobile application on PARMAR's telephone to an address in Boston, Massachusetts.

e.    The servers for Company-1 are located in San Francisco, California.

8.    Based on a search of the National Crime Information Center Database, the license plate for T713363 is registered to HARBIR PARMAR, the defendant.

9.    Based on my review of cell site data for the cellular telephones used by Victim-1 and HARBIR PARMAR, the defendant, I have learned, in substance and in part, the following:

a.    Both telephones were in Manhattan, New York at approximately 11:15 p.m.

b.    Both telephones were in West Haven, Connecticut at approximately 1:45 a.m.

4

10.   On or about July 25, 2018, other law enforcement officers and I interviewed HARBIR PARMAR, the defendant, who said, in substance and in part, the following:

a.   On or about February 21, 2018, PARMAR was driving a Toyota Highlander and working as a driver for Company-1.

b.   On or about February 21, 2018, PARMAR picked up Victim-1 in his vehicle from a location in Manhattan, New York.

c.   PARMAR understood that Victim-1 wanted to be dropped off in White Plains and that Victim-1 entered a destination into Company-1's mobile application that reflected her desire to be dropped off in White Plains.

d.   While Victim-1 was asleep in his vehicle, PARMAR changed the destination in Company-1's mobile application on his telephone to a location in Massachusetts.  When he did this, PARMAR knew that Victim-1 did not want to go to Massachusetts.

11.   Based on my review of records from Company-1, I have learned, in substance and in part, the following:

a.   From in or about December 2016 through in or about February 2018, HARBIR PARMER, the defendant, has sent allegedly false information about the destinations of Company-1's customers through Company-1's mobile application on at least 11 occasions.

b.   In each of the occasions discussed in paragraph 11(a), customers of Company-1 filed complaints with Company-1 about being overcharged for their rides through Company-1's mobile application.

c.   From in or about December 2016 through in or about February 2018, PARMAR has sent false information about the application of a cleaning fee to be applied to the accounts of Company-1's customers on at least 3 occasions.

d.   For example, on or about February 24, 2018, PARMAR corresponded with Company-1 through the internet and stated that Victim-1 vomited in his car.  PARMAR requested that a cleaning fee be charged to Victim-1.  On or about March 16, 2018, PARMAR sent Company-1 photographs of vomit in his car,

claimed that the vomit was caused by Victim-1 and stated that he was waiting for a response on his cleaning fee request.  In my subsequent discussion with PARMAR, he told me that he knew that Victim-1 did not vomit in his car.

        e.    The occasions discussed in paragraphs 11(a) and 11(c) have resulted in over $3,600 in improper charges to the accounts of Company-1's customers.

       WHEREFORE, deponent respectfully requests that HARBIR PARMAR, the defendant, be arrested and imprisoned or bailed, as the case may be.

_____
JAMES MENTION
Task Force Officer
Federal Bureau of Investigation

Sworn to before me this
12th day of October, 2018

_____
THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK