UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :        **MEMORANDUM**
v.                                   :        **OPINION AND ORDER**
                                     :
HARBIR PARMAR,                       :        18 CR 877 (VB)
                      Defendant.     :
--------------------------------------------------------------x

Now pending is defendant Harbir Parmar's renewed motion pursuant to 18 U.S.C.

§ 3582(c)(1)(A)(i) to reduce his term of imprisonment and serve the balance of his 36-month

sentence under home confinement.  (Doc. #29)  Parmar's principal argument is that his health

conditions place him at greater risk of contracting COVID-19 in prison and developing serious

complications if he does.

For the following reasons, the motion is DENIED.[1]

The current COVID-19 pandemic is an unprecedented worldwide catastrophe.  But it

does not warrant the early release of sentenced inmates in federal prisons convicted of serious

offenses, like Parmar, whose medical conditions and risk of contracting the virus cannot, by any

reasonable definition, be deemed "extraordinary and compelling."  See 18 U.S.C. §

3582(c)(1)(A)(i).

First, Parmar's offenses were exceptionally serious.  On March 11, 2019, he pleaded

guilty to one count of kidnapping and one count of wire fraud.  Specifically, Parmar admitted

that on February 21, 2018, while working as an Uber driver, he kidnapped a 31-year-old woman

who had ordered an Uber to take her from Manhattan to White Plains.  The victim fell asleep

sometime after Parmar picked her up, after which Parmar changed her destination in the Uber

---

[1]     For the purpose of ruling on Parmar's motion, the Court has considered Parmar's motion
submissions (Docs. ## 29, 34), the government's opposition (which includes defendant's sealed
medical records) (Doc. #36), and an undated letter from defendant's sister.  (Doc. #30).

application to a location in Massachusetts so that she would be overcharged for the trip. The victim eventually awoke, and despite her request to be driven to White Plains, Parmar dropped her off on the side of a highway in Branford, Connecticut, more than sixty miles from her home.

Parmar also admitted to engaging in similar conduct, involving other victims, from December 2016 through February 2018. Specifically, Parmar admitted having picked up several Uber customers, and, after dropping them off at their intended destinations, altering their destinations in the Uber application to continue their trips and overcharge them and/or Uber. Parmar further admitted that on several occasions, including on February 21, 2018, he submitted false claims to Uber that customers had vomited in his vehicle. He did so to falsely charge additional fees to the victims and/or Uber.

On June 24, 2019, after careful consideration of all the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense, and the history and characteristics of the defendant, the Court sentenced Parmar to thirty-six months' imprisonment to be followed by three years of supervised release. The Court did so despite an applicable Sentencing Guidelines range of 87 to 108 months' imprisonment—stipulated to by Parmar and the government in a plea agreement—and the Probation Office's recommendation of a sentence of sixty months' imprisonment. The Court determined that the sentence imposed was sufficient but not greater than necessary to reflect the serious nature of Parmar's crimes, promote respect for the law, provide just punishment, and afford adequate deterrence.

To date, Parmar has served roughly eleven months of his sentence, or about thirty-one percent of the sentence imposed.[2]

---

[2]     Parmar was arrested in this case on October 16, 2018, and released on bail the next day. At sentencing, the Court ordered Parmar to self-surrender to the Bureau of Prisons ("BOP") by

Second, Parmar has not demonstrated "extraordinary and compelling reasons" to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed prison sentence—taking into account critical data such as his medical history.  Parmar is 26 years old. He is not elderly or inform.  He contends he has leg, hip, and lower back complications and pain from a 2014 motor vehicle accident, and a metal rod in his left femur, as well as a left ankle derangement and damage, but fails to indicate how such medical issues significantly increase his likelihood of contracting COVID-19 or developing serious complications from the virus. Moreover, Parmar's medical records indicate BOP medical staff have provided, and continue to provide, treatment for these conditions.  Indeed, according to his medical records, Parmar has had at least six evaluations at Federal Correctional Institution ("FCI") Fort Dix, during which the above impairments were discussed; received X-rays and pain medication for these injuries; and had multiple visits with an orthopedist to assess his medical condition.

Parmar also asserts he suffers from abnormal liver function, hypertension, and hyperlipidemia, with elevated lipid levels and high cholesterol.  Although Parmar's medical file reflects a family history of hyperlipidemia and diabetes, it does not indicate Parmar takes medication for any of the above conditions.  Nevertheless, again, there is no credible indication in Parmar's medical records or motion submission that these alleged medical conditions significantly increase Parmar's risk of contracting COVID-19, or developing serious complications from it, or that Parmar has been unable to manage these alleged conditions while in prison.  See, e.g., United States v. Gotti, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (denying motion for compassionate release because the defendant "has not shown he has a terminal illness

August 9, 2019.  Accordingly, to date, defendant has served just under eleven months of his sentence.

or a serious physical or medical condition that has substantially diminished his ability to provide self-care within the environment of a correctional facility").  On the contrary, Parmar's medical file indicates BOP has regularly monitored, and continues to monitor, Parmar's medical status, and has provided Parmar routine treatment, including laboratory testing.  Indeed, the records generally indicate Parmar has received, and continues to receive, adequate and attentive medical care.

Of course Parmar is at risk for contracting the virus at FCI Fort Dix.  However, the Court is persuaded by the government's submission that FCI Fort Dix has taken substantial measures to respond to the COVID-19 threat at its facility, which have in fact mitigated its spread, and has the means to competently care for its inmate population.  Even still, Parmar's contention that he is subject to a significantly increased risk of contracting COVID-19 at FCI Fort Dix because "69 inmates" are infected and "at least 10 prison staff" are on medical leave is unpersuasive for an additional reason.  According to the government, there are no inmates infected with COVID-19 in the low-security facility at FCI Fort Dix, where Parmar is housed.  Rather, all confirmed cases of COVID-19 at FCI Fort Dix are restricted to the minimum-security satellite camp at FCI Fort Dix, which is separate and apart from the low-security facility.  Moreover, and importantly, FCI Fort Dix's handling of Parmar's medical care since the commencement of his term of imprisonment in August 2019 is demonstrative of BOP's ability to provide adequate care to Parmar, even if he were to contract COVID-19.

Finally, as required by Section 3582(c)(1)(A), the Court has considered "the factors set forth in section 3553(a) to the extent that they are applicable."  The exceptionally serious nature of the offenses warranted a thirty-six month prison sentence at the time sentence was imposed; those same factors counsel strongly against cutting that sentence by roughly seventy percent,

4

especially in light of the downward variance already imposed at sentencing, despite both the stipulated Guidelines range of 87 to 108 months' imprisonment and the Probation Office's recommendation of sixty months' imprisonment.  Moreover, the sentence was designed to promote respect for the law and provide just punishments.  To so dramatically reduce the sentence in light of the current public health crisis would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law.  And shortening Parmar's sentence would also undermine another critical sentencing objective in this case: the need for the sentence imposed to afford adequate deterrence to criminal conduct.  These sentencing factors not only supported the sentence at the time it was imposed, they also weigh strongly against Parmar's early release.[3]

Accordingly, defendant Harbir Parmar's motion for a reduction of his term of imprisonment is DENIED.

---

[3]     The government disputes whether Parmar's request as styled—that the Court order his immediate transfer to home confinement to serve the balance of his term of imprisonment—is proper.  However, Section 3582(c)(1)(A) states in pertinent part:  "[T]he court . . . may reduce the term of imprisonment (and may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)."  Home confinement would be a condition of supervised release if Parmar were released. Accordingly, the Court need not address the government's issue with the precise phrasing of Parmar's request.

Chambers will mail a copy of this Memorandum Opinion and Order to defendant at the

following address:

> Harbir Parmar
> Reg. No. # 86212-054
> P.O. Box 2000
> FCI Fort Dix
> Joint Base MDL, NJ  08640

Dated: July 6, 2020
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge